# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERIK DIEDRICHSEN and RIVERBEND RESOURCES INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 1:24-cv-02773 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Erik Diedrichsen ("Diedrichsen") and Riverbend Resources Inc. ("RRI") (collectively, "Plaintiffs") hereby brings the present action for design patent infringement, false designation of origin under the Lanham Act, unjust enrichment under Illinois state common law, unfair competition under Illinois state common law, and violation of the Illinois Uniform Deceptive Trade Practices against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**I.       JURISDICTION AND VENUE**

1.       This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has original subject matter jurisdiction over the false designation of origin claim asserted in this action

pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., (the "Lanham Act"), and 28 U.S.C. §§ 1338(a) and 1331. This Court has supplemental jurisdiction over Plaintiffs' Illinois Uniform Deceptive Trade Practices Act claim, Illinois state common law unjust enrichment claim, and Illinois state unfair competition claim pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiffs' patented design and trade dress, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the state of Illinois.

## II.   INTRODUCTION

3. Plaintiffs filed this case to prevent e-commerce store operators who infringe upon Plaintiffs' patented design and trade dress from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction,

occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiffs' intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiffs are forced to file this action to combat Defendants' infringing of their patented design and trade dress, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiffs have been, and continue to be, irreparably damaged through loss of market share and erosion of Plaintiffs' patent and trade dress rights because of Defendants' actions and therefore seek injunctive and monetary relief.

### III. THE PARTIES

4. Plaintiff, Erik Diedrichsen, is the sole owner and President of RRI, the inventor of Plaintiffs' asserted patent, as described below. Diedrichsen's address is 45 River Street, West Bridgewater, MA 02379

5. Plaintiff, Riverbend Resources Inc., is a Massachusetts corporation with its principal place of business at 45 River Street, West Bridgewater, MA 02379. RRI is the exclusive licensee of products which embody Plaintiffs' asserted patent and use Plaintiffs' asserted trade dress, as described below.

6. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their

infringing network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV. PLAINTIFFS' PATENT

7. Diedrichsen is the inventor and owner of all right, title, and interest in U.S. Patent No. ▮▮▮▮▮▮▮ ("Plaintiffs' Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

8. Plaintiff's Patent issued on ▮▮▮▮▮▮▮. *See* **Exhibit 1**.

9. RRI is the exclusive licensee of products which embody Plaintiffs' Patent.

10. Plaintiffs' Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

11. Plaintiffs' Patent discloses and claims new ornamental design for a ▮▮▮▮▮▮▮ *See* **Exhibit 1**.

12. Plaintiffs design, manufacture, market, and sell a variety of products related to ▮▮▮▮▮▮▮, including ▮▮▮▮▮▮▮. Plaintiffs also sell apparel related to ▮▮▮.

13. Plaintiffs sell their products, including products that embody Plaintiffs' Patent (collectively, "Plaintiffs' Products"), exclusively direct-to-consumer through their webstore. Some of Plaintiffs' Products can be seen below:



Figure 1         Figure 2         Figure 3

14. Plaintiffs began selling Plaintiffs' Products, which embody the ornamental design claimed in Plaintiffs' Patent, on or about ███████, after the Plaintiffs' Patent application filing date of ███████. *See* **Exhibit 1**.

## V. PLAINTIFFS' TRADE DRESS

15. Plaintiffs protect their substantial investment in innovation and design from imitators with their intellectual property rights.

16. In addition to embodying Plaintiffs' Patent, Plaintiffs' Products bear a distinctive trade dress in the design of Plaintiffs' Products. *See* Figures 1-3.

17. As a result of Plaintiffs' widespread use and display of the trade dress, 1) the public has come to recognize Plaintiffs' Products bearing the trade dress as emanating from Plaintiffs; 2) the public recognizes that products bearing the trade dress constitute high quality products that conform to the specifications created by the Plaintiffs; and 3) the trade dress has established strong secondary meaning and extensive goodwill.

18. Plaintiffs' trade dress is not functional. The design features embodied by the trade dress are not essential to the function of the product. The trade dress is not in its particular shape

because it works better in that shape. There are numerous alternative shapes and structures to Plaintiffs' Products, many of which are legitimately sold by Plaintiffs' competitors.

19. Further, the design features of the trade dress are not comparatively simple or inexpensive to manufacture because the elements are complex. The design features of the trade dress do not affect the quality of the product. *See* Figures 1-3. The design of the trade dress is not a competitive necessity.

20. The trade dress is an invaluable asset essential to Plaintiffs' success and represents the design of their signature products.

## VI. DEFENDANTS' UNLAWFUL CONDUCT

21. The success of the Plaintiffs' Products has resulted in significant infringement of the Plaintiffs' Patent and trade dress. Because of this, Plaintiffs have implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiffs have identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), Shopify Inc. ("Shopify"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

22. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road:*

*Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

23. Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*.

24. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce

platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

25. The very same concerns regarding anonymity, offshore online infringement, multi-storefront infringers, and slow and ineffective marketplace procedures for intellectual property rights holders, impact Plaintiffs' enforcement efforts when trying to assert their own patent and trade dress rights.

26. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

27. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their

stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants use of the Plaintiffs' Patent or trade dress, and none of the Defendants are authorized retailers of Plaintiffs' Products.

28. E-commerce store operators, like Defendants, commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29. E- commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

30. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

31. E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiffs, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

32. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiffs' enforcement. E- commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

33. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have, jointly and severally, knowingly and willfully infringed Plaintiffs' Patent and trade dress in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

34. Defendants' unauthorized use and/or manufacturing of the ornamental designs claimed in Plaintiffs' Patent and trade dress in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United

States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers, loss of market share, and erosion of Plaintiffs' patent rights is irreparably harming Plaintiffs.

## COUNT I
## PATENT INFRINGEMENT OF PLAINTIFFS' PATENT (15 U.S.C. § 271)

35. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

36. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have, jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiffs' Patent.

37. As shown in the claim chart attached as **Exhibit 6**, the products being sold by Defendants incorporate each of the design elements claimed in Plaintiffs' Patent. Accordingly, the product being sold by Defendants infringe upon Plaintiffs' Patent.

38. Specifically, Defendants offer for sale, sell, and/or import into the United States for subsequent resale or use Unauthorized Products that infringe directly and/or indirectly the ornamental design claimed in Plaintiffs' Patent

39. As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiffs' Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiffs' Patent, including such acts into the State of Illinois, is irreparably harming Plaintiffs. Defendants' wrongful conduct has caused Plaintiffs to suffer

irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design as well as the lost sales and loss of repeat sales stemming from the infringing acts.

40. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiffs are entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

41. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiffs' Patent, Plaintiffs will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

42. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a))

43. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

44. Despite Plaintiffs' use and adoption of their trade dress, Defendants have developed, manufactured, imported, advertised, and/or sold products that use a design that is confusingly similar to Plaintiffs' trade dress.

45. Unauthorized Products offered for sale and sold by Defendants are of the same nature and type as Plaintiffs' Products, and, as such, are likely to cause confusion to the general purchasing public. *See* **Exhibit 2 and Exhibit 6**.

46. By misappropriating and using the Plaintiffs' trade dress, Defendants misrepresent and falsely describe to the general public the origin and source of Unauthorized Products and create a likelihood of confusion by consumers as to the source of such merchandise.

47. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiffs, allowing Defendants to profit from Plaintiffs' goodwill while causing Plaintiffs irreparable and immeasurable injury.

48. On information and belief, Defendants have intentionally and blatantly copied Plaintiffs' trade dress and pass of their goods as Plaintiffs' Products to misappropriate the immense goodwill that Plaintiffs have spent enormous time, effort, and expense to cultivate in the marketplace with their high-quality products.

49. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products, products which use Plaintiffs' trade dress, has created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiffs.

50. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiffs' trade dress in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

51. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

# COUNT III
## UNJUST ENRICHMENT – ILLINOIS STATE COMMON LAW

52. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

53. Plaintiffs spent substantial time, money, and resources in the development of Plaintiffs' Patent and trade dress.

54. Plaintiffs' Products have a unique ornamental design that is protected as a trade dress and under Plaintiffs' Patent.

55. Defendants traded upon Plaintiffs' goodwill, reputation, marketing, and commercial success by selling products which infringed upon Plaintiffs' Patent and trade dress.

56. Defendants, by selling Unauthorized Products, eroded Plaintiffs' market share by trading upon their reputation and goodwill.

57. Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiffs' Patent and trade dress and by selling those products they were eroding Plaintiffs' market share and trading upon their good will, reputation, research, and development.

58. Defendants, by offering for sale and selling Unauthorized Products, improved their own good will and market share by trading upon the good will, reputation, research, and development of Plaintiffs.

59. On information and belief, Defendants have sold Unauthorized Products, further eroding Plaintiffs' market share and trading upon their good will, reputation, research, and development.

60. Plaintiffs have never received any relief for the erosion to their market share or any compensation from Defendants for their use of Plaintiffs' good will, reputation, research, and development.

61. Defendants have been unjustly enriched because they have denied Plaintiffs access to customers they would have otherwise had by trading upon their good will by selling products directly to consumers, products which infringe upon Plaintiffs' Patent and trade dress, and competing against Plaintiffs using products which embody Plaintiffs' Patent and infringe upon their trade dress in the same commercial market.

## COUNT IV
## UNFAIR COMPETITION – ILLINOIS STATE COMMON LAW

62. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

63. By marketing, advertising, and selling their products which infringe upon Plaintiffs' Patent and trade dress, or a design confusingly similar thereto, Defendants are acting with the purpose and intent to deceive consumers into believing that their products are made by Plaintiffs or are affiliated with or approved by Plaintiffs.

64. By marketing, advertising, and selling their products which infringe upon Plaintiffs' Patent and trade dress, or a design confusingly similar thereto, Defendants intent to harm and are harming Plaintiffs' business.

65. As a result of Defendants' unfair competitive activities, Plaintiffs have been damaged and will continue to be damaged less Defendants are enjoined from infringing upon Plaintiffs' Patent and trade dress, or a design confusingly similar thereto.

66. Plaintiffs are also entitled to recover money damages to compensate for Defendants' unfair conduct.

# COUNT V
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 Ill. Comp. Stat. 510)

67. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

68. Unauthorized Products sold and offered for sale by Defendants are of the same nature and type as Plaintiffs' Products and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

69. Subsequent to Plaintiffs' use and the development of secondary meaning in Plaintiffs' trade dress, Defendants have developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to Plaintiffs' trade dress.

70. By misappropriating and using Plaintiffs' trade dress, Defendants misrepresent and falsely describe to the general public the origin and source of Unauthorized Products and create a likelihood of confusion by consumers as to the source of such merchandise.

71. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentations that Unauthorized Products were created, authorized, or approved by Plaintiffs, all to the Defendants' profit and to Plaintiffs' irreparable and immeasurable damage and injury.

72. Defendants' aforementioned acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill Comp. Stat. 510/2 *et seq.*, in that Defendants' use of the Plaintiffs' trade dress in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

73. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable and immeasurable harm and injury to their goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiffs' Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiffs' Patent

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Shopify, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiffs' Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiffs' Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiffs' Patent has been willful.

5) That Plaintiffs be awarded damages for such infringement in an amount to be proven at trial, including Defendants' profits pursuant to 35 U.S.C. § 289 and any other damages as appropriate under 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiffs be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of upon Plaintiffs' Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants infringed upon Plaintiff's trade dress, committing acts of unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

9) A finding that Defendants were unjustly enriched.

10) A finding that Defendants infringed upon Plaintiff's trade dress, committing acts of unfair competition in violation of Illinois state common law.

11) A finding that Defendants infringed upon Plaintiff's trade dress, committing acts in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill Comp. Stat. 510/2 *et seq.*

12) That Plaintiffs be awarded their reasonable attorneys' fees and costs.

13) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 5, 2024

Respectfully submitted,

/s/ Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque
shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:  (847) 969-9123
Fax:  (847) 969-9124

*Counsel for Plaintiffs, Erik Diedrichsen and Riverbend Resources Inc.*

**VERIFICATION**

I, Erik Joseph Diedrichsen, hereby certify as follows:

1. I am the President of Riverbend Resources Inc. As such, I am authorized to make this Verification on my and Riverbend Resources Inc.'s behalf.

2. I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in  West Bridgewater, Massachusetts  on April __5__, 2024

_____
Erik Joseph Diedrichsen
President